OPINION
{¶ 1} Defendant-appellant, Charles W. Sellers, Jr., is appealing the trial court's refusal to grant him leave to withdraw his guilty plea. He assigns a single error for our consideration:
 THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT'S MOTION TO WITHDRAW HIS PLEA, WHICH WAS MADE BEFORE SENTENCING. *Page 2 
 {¶ 2} The fact that appellant moved to set aside his guilty plea before he was sentenced is critically important. Motions to set aside a guilty plea after sentencing are to be granted only to correct a manifest injustice. See Crim.R. 32.1.
 {¶ 3} Before sentencing, a "motion to withdraw a guilty plea should be freely and liberally granted." State v. Xie (1992), 62 Ohio St.3d 521,527. This right is not an absolute right to withdraw a guilty plea if the motion is made before sentencing. The decision to grant or deny a pre-sentence motion is still within the sound discretion of the trial court. See the syllabus of Xie, idem.
 {¶ 4} Appellant entered a plea of guilty to a reduced charge of theft as a felony of the third degree. A related charge of money laundering was dismissed. The money was from a loan appellant and a woman close to him had obtained, secured by the woman's real estate. The plea was entered on November 20, 2006.
 {¶ 5} On December 1, 2006, appellant filed a handwritten document which raises serious questions about his clarity of mind. The document includes sentences like "I am dismissing myself from the jurisdiction of this court because it was done by mistake" and "I now know the truth and I will not be subjected to any corporate jurisdiction."
 {¶ 6} On December 20, 2006, appellant filed a more cogent "motion to withdraw guilty plea." In the motion, he asserted his innocence and indicated that he had entered his plea under the influence of the attorneys involved in his case. He claimed that even though he was on parole at the time he entered his plea, he expected a "probationary" sentence. *Page 3 
 {¶ 7} On January 3, 2007, the trial court held a sentencing hearing and a hearing on the motion. The court discussed the document filed December 1, 2006, which the trial court accurately described as "incomprehensible."
 {¶ 8} Appellant claimed he was under the influence of medication when he authored and caused to be filed the incomprehensible document. Appellant described his medication as "Nurotin," which may be actually Neurontin. Neurontin is used to manage pain following an outbreak of shingles or postherpetic neuralgia. More should have been developed regarding what medication appellant was taking at the time his plea was taken and what medical or mental health condition he was experiencing which necessitated his taking medication while in custody.
 {¶ 9} Appellant indicated that he had been under pressure from his attorney to enter a guilty plea, who appellant claimed had promised him probation while he was also on parole. The defense attorney for appellant denied this claim from appellant and indicated that the trial court had, on two occasions, indicated that prison terms would be forthcoming. The only debate, according to counsel, was whether appellant would receive jail-time credit for the time he was in custody before sentencing.
 {¶ 10} This exchange regarding probation/community control versus a sentence of incarceration can be understood in two or more ways. One option is that appellant simply did not understand what was going on due to medication, mental health problems or some other cause. This option would be consistent with the incomprehensible document filed 11 days later.
 {¶ 11} A second option is that defense counsel really did make statements which led appellant to believe he might get probation/community control. From an objective *Page 4 
point of view, that option is unlikely, unless coupled with some sort of drug program or incarceration at the community-based correctional facility. The trial judge expressly told appellant at the time of the plea that the judge was pretty sure appellant was going to prison.
 {¶ 12} At the January 3, 2007 hearing on his motion to withdraw his guilty plea, appellant explained in detail why he felt he was not guilty of the theft and money laundering charges. He claimed he thought he was single when he "married" the alleged victim of the theft. He indicated that he was a party to the loan which generated the money he was alleged to have stolen. He indicated that he had fully intended to pay the loan and never had an intention to steal anything.
 {¶ 13} The trial court heard a statement from an assistant prosecuting attorney, who discounted the suggestion that appellant's medication played a role in the guilty plea. The trial court also gave defense counsel an opportunity to speak, but defense counsel refused to address the motion. Defense counsel claimed ignorance of the motion and a lack of ability to argue effectively on behalf of appellant.
 {¶ 14} The trial court then overruled the motion to withdraw the guilty plea without explanation.
 {¶ 15} At the time of the plea, appellant indicated he was taking "Nurotin" for a "nerve condition." He indicated that he was under "a lot of stress making this decision" to plead guilty. As indicated above, other than asking appellant if he was under the influence, the trial court did little to investigate the medication or need for medication.
 {¶ 16} When the trial judge was reviewing appellant's rights with him, appellant learned that he could have a court trial as opposed to a jury trial. Appellant then *Page 5 
discussed this option with his attorney, who indicated that appellant wished for a court trial. Appellant affirmed that.
 {¶ 17} When the trial court indicated that, if appellant went to trial and was found guilty, he could receive more time of incarceration than he could receive under the plea agreement, appellant returned to wanting the plea agreement. He then had another discussion with his attorney.
 {¶ 18} Appellant proceeded with the plea.
 {¶ 19} We cannot say that the trial court abused its discretion when it accepted the plea originally. However, the trial court should have also allowed appellant to set aside the plea, applying the mandate of the Supreme Court of Ohio that such motions be freely and liberally granted when made before sentencing. Appellant obviously felt he was not guilty because the money he ended up with was the proceeds of a loan for which he was legally obligated. His relationship with the woman who was the co-signor on the loan was complicated. She thought they were married and called herself Ramona Sellers. He claimed he thought his former wife had divorced him, so he was free to marry Ramona.
 {¶ 20} The events at the time of the plea and soon thereafter raised serious questions about appellant's clarity of mind. Objectively, the document filed pro se 11 days later raised serious questions about appellant's mental health and/or sobriety, despite the fact he was in custody. The document was and is "incomprehensible."
 {¶ 21} Under the circumstances, especially given a legitimate argument that appellant was not guilty and the admitted fact that appellant was lapsing into periods of being incomprehensible, the trial court should have allowed appellant to withdraw his guilty plea. *Page 6 
 {¶ 22} We sustain the sole assignment of error. We reverse the judgment of the trial court and remand the case with instruction to allow appellant, Charles W. Sellers, Jr., to withdraw his guilty plea. The trial court shall then conduct such proceedings as are appropriate.
Judgment reversed and remanded with instructions.
WHITESIDE, J., concurs.
SADLER, P.J., dissents.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.